UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|  |  |
|---|---|
| KIRSTIE TRAHAN, | |
| Plaintiff, | CIVIL ACTION |
| v. | Docket No:  1:18-cv-00209-LEW |
| WAYFAIR MAINE, LLC | |
| Defendant. | |

**DECLARATION OF KRISTIE FOSTER**

1.      My name is Kristie Foster.  I hold the position of Customer Service Manager II at Wayfair, for which I have worked since 06/13/2016.   I am over eighteen years old, reside in Penobscot County, Maine, and made this declaration on the basis of personal knowledge.

2.      Sales and Service Consultants (SSCs) are Wayfair's customer service representatives.  SSCs are responsible for interacting with customers over the phone and, in September 2017, all of Wayfair's SSCs in Bangor worked at the Bangor call center.  In the summer of 2017, Wayfair was hiring SSCs on a rolling basis.

3.      The call center in Bangor has an open floor plan, with SSCs sitting in very close proximity to one another.  At any given time, a significant percentage of the individuals on the call center floor are on the phone with customers, taking orders and answering customers' questions.  At Wayfair, the SSCs work collaboratively, insofar as they frequently interact with each other and rely upon each other for tips and information.  SCCs also frequently consult with their neighbor or shoulder buddy to ask questions, gain valuable insight and participate in team competitions or Wayfair contests together.  As part of a team they work very closely together in team meetings, group coaching sessions, trainings and support each other through a team chat

room.  An example of this could be; if an SSC is strong in an area or key performance indicator, they may present best practices or information on this team in a meeting.  They may also share the information in the team chat room or team email.

4.    On September 20, 2017, two other managers, Haley Mannion and Joseline Belanger approached me following a managers' meeting and reported that there had been some kind of a conduct incident on the floor between an employee named Brianna[1] and an employee named Kirstie Trahan.

5.    Ms. Mannion shared with me a skype message that she received from Brianna during the managers' meeting, which read as follows:  "So I'm assuming that this would be something I would bring up with you, but [Ms. Trahan] is the one that sit diagonal from me.  If she snaps at me one more time when I'm trying to help her and tells me 'she's sick of listening to me run my mouth all day' I'm probably going to lose my cool.  Just so you know.  She's snapped at all of us.  And it's getting to be way too much.  Especially when I'm just trying to be helpful."

6.    Ms. Mannion, who was Brianna's manager, and I met with Brianna first.  Brianna said that Ms. Trahan had asked a general question out loud about the phone number to FedEx Canada and that she (Brianna) started to respond that it was on a sheet of paper that Wayfair had given to them.  According to Brianna, before she could finish her sentence, Ms. Trahan cut her off and said, "I was not talking to you, mind your business."  Brianna reportedly replied, "If you would have let me finish, I was going to tell you that FedEx was also listed on that contact sheet. I was trying to help you."  Brianna said that Ms. Trahan got upset and told Brianna not to be "so ignorant" before throwing her headset, slamming down her phone, and walking off.  Brianna said that Ms. Trahan used the word "fuck" as well, but she could not remember exactly when she did so.

---

[1] I refer to Ms. Trahan's coworkers by their first names only, in order to protect their privacy.

7.      Ms. Belanger, who was Ms. Trahan's manager, and I then met with Ms. Trahan. Ms. Trahan asked why we were meeting with her, and I explained that we were made aware of a situation on the floor and needed more details. Ms. Trahan replied, "I said they were a bunch of bitches." Ms. Trahan proceeded to explain that Brianna had snapped at her. When I probed for details about the words Brianna had used or how she had "snapped," Ms. Trahan was not able to elaborate. Ms. Trahan said that she was asking a question directed only at Ashley, and Brianna did not need to respond. Ms. Trahan said that she was sick of the "clique" that Brianna, Will and a few others have, and said they are always talking about her. Ms. Trahan again described her coworkers as a "bunch of bitches" and said she reported this clique to her nesting coach, Thoma Noddin. Ms. Trahan denied that any "f bombs" were used on the floor and said she did not know why she was being questioned. Ms. Trahan said she wanted a seat move and a team change to be away from Brianna.

8.      During this meeting with Ms. Trahan, I observed that Ms. Trahan's body language was very closed off. She had her arms crossed, faced her chair away from me toward the wall, and rolled her eyes several times while speaking with me. I concluded that Ms. Trahan was behaving rudely and unprofessionally, and that she took no ownership for her behavior, despite admitting to us that she called her coworkers "bitches" and again calling them "bitches" in the course of this meeting.

9.      Next, Ms. Belanger and I met with Ashley. Ashley said Ms. Trahan had asked a general question to the group about a phone number and that Brianna jumped in, offering up the phone number to help her peer. Ms. Trahan reportedly snapped back, "That's not what I was talking about." Brianna reportedly replied, "Well if you would have given me a chance to finish you would have known that I was going to tell you the FedEx is also on the sheet." Ms. Trahan

reportedly said, "Don't be ignorant and have an attitude with me."  According to Ashley, she tried to diffuse the situation at this point by saying, "Hey guys, we are on the floor, we all ask questions, and everyone needs help," after which Ms. Trahan threw down her phone and head set and dropped a few "F bombs" before stepping away from her desk.

10.     Ashley told us that this was not the first time that Ms. Trahan had gotten upset at Brianna or someone else in their group.  Ashley said he had witnessed Ms. Trahan getting frustrated and beating her closed fists on the desk, throwing her phone or headset, or snapping at someone.

11.     After meeting with Ashley, I met with Thoma Noddin, the nesting coach, to ask if anyone had ever come to her to report anything or share any information about Ms. Trahan.  Ms. Noddin said she did not recall any of Ms. Trahan's coworkers coming to her.  Ms. Noddin went on to share that, at one point, she had received a skype message about Ms. Trahan's attitude from another nesting coach.   Ms. Noddin said that she forwarded the message to Darren Plante, then a manager.

12.     After meeting with Ms. Noddin, I spoke to Mr. Plante.  Mr. Plante did not recall receiving the skype message Ms. Noddin described, but agreed to look for it.  Shortly thereafter, he forwarded me the message that is attached hereto as Exhibit A, and I forwarded Exhibit A to Talent Manager Jonie Dunivan.

13.     Mr. Plante told me that, while he did not remember receiving the skype message from Ms. Noddin, he did recall hearing from someone that Ms. Trahan had treated floorwalker Matt Pulley rudely.

14.     I met with Matt Pulley and asked him about his experience working with Ms. Trahan during her nesting period.  Mr. Pulley said that Ms. Trahan exhibited a poor attitude at

{W7281796.1}

work, and one particular instance stuck out in his mind.  He said that Ms. Trahan had raised her hand to ask for help on a wizard question and when he got to her desk, he got down on one knee at her level to help her.  He could see she had not yet run the wizard and so asked her to do that.  Ms. Trahan replied that she had already done it, and Mr. Pulley asked her to humor him and run it one more time.  Ms. Trahan then said, "I'm starting to lose my patience with you."  According to Mr. Pulley, he said, "I'm sorry, I'm just trying to help and walk you through the process," after which Ms. Trahan got up from her desk, said, "I can't even stand to be near you right now," and stormed off.

15.    According to Mr. Pulley, a few days after the incident, Ms. Trahan asked for help and when he approached, she acted as if nothing had happened.  Mr. Pulley said that, the next day a group of trainees gave him a card saying how thankful they were for him and that they were sorry he had been mistreated.

16.    By the time I was done meeting with Mr. Pulley, Talent Manager Jonie Dunivan (who is responsible for Human Resources-related functions at the Bangor call center), had returned to the office.  I shared with her what I had learned from the individuals I interviewed.

17.    Shortly thereafter, Ms. Dunivan told me that we would be sending Ms. Trahan home for the day.  I was present when Ms. Dunivan informed Ms. Trahan she was being sent home for the day.  Ms. Trahan's demeanor was similar to the demeanor she exhibited in my meeting with her earlier that afternoon.  Her body language was closed off, and she rolled her eyes.  At the end of this meeting, I gathered all of Ms. Trahan's belongings at her request, took her badge, and escorted her to the exit.

18.    I typed up all of the information I gathered from others and emailed it to Ms. Dunivan at 6:54 a.m. the following morning, on September 21, 2017.  Attached hereto as Exhibit

B is a true and accurate copy of the email I sent to Ms. Dunivan, summarizing the information I gathered in the course of my investigation.  Thereafter, I was not involved in the investigation or the decision to terminate Ms. Trahan's employment.

19.     At no time during the foregoing events was I aware that Ms. Trahan has post traumatic stress disorder or any mental health condition.  Ms. Trahan did not disclose this to me in the course of any of my meetings with her and, to my knowledge, nobody else at Wayfair was aware of her diagnosis either.

I declare under the penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: June 10, 2019                          /s/ Kristie Foster
                                             Kristie Foster

{W7281796.1}